DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARLON A. ELLISON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1754

[May 29, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura S. Johnson, Judge; L.T. Case No. 50-2016-CF-009835-AXXX-WB.

Carey Haughwout, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

In this case, we consider whether the trial court erred in admitting evidence of an out-of-court identification of appellant by a witness, who was not present at the scene of the robbery, after viewing a surveillance video. We find the trial court erred in admitting this particular out-of-court statement since it was unlike the statements of the other two witnesses who were present at the robbery and whose statements bore the "the mark of reliability." Since this witness's out-of-court statement was not based on her own "visual memory of the event," but rather on her recognition of appellant from viewing a surveillance video, that out-of-court statement was inadmissible hearsay. Further, we find that the admission of this hearsay was not harmless error. Accordingly, we reverse.

Two masked men wearing gloves and hooded sweatshirts entered a CVS and pointed guns at the two store employees. After failing to get money from the safe, the robbers took money from the cash registers and left. The police interviewed the two employees at the scene. Both employees told the police in recorded interviews that appellant was one of the robbers.

However, at trial both witnesses recanted the statements of identification they had made in the recorded interviews.

In the recorded interview, the first employee stated that the light skinned robber was appellant, who was the boyfriend of Brittany Harris, a former CVS employee who had been fired the day before the robbery. The employee told the police that she had seen appellant "thousands of times," including recently, and that appellant's aunt was the employee's best friend. Also in the interview, the employee stated she was "a thousand percent" sure appellant was one of the robbers. She told the police she recognized his voice, the "curly hair on his legs," his physical build, his skin tone, his height, and his size.

The police also interviewed the other employee, who was a manager. During the recorded interview, the manager said that she recognized the light skinned robber as Harris's boyfriend and that she had seen him at CVS three weeks earlier buying milk. The manager told the police she realized one of the robbers was appellant after the other employee said it was him. The manager also told the police she recognized appellant's skin tone and eyes.

Subsequently, the police showed a surveillance video of the robbery to Harris, a former employee who was not present during the robbery. In a recorded statement to the police, Harris identified appellant as one of the robbers after reviewing the surveillance video. She told the police that she recognized appellant from the way he moved, his skin tone, his height, and his physical build. She also told the police that she and appellant had been dating for almost a year.

Appellant was charged with robbery with a firearm while wearing a mask. At trial, the two employees recanted what they stated in the recorded interviews. Neither employee identified appellant in court. Harris identified appellant in the courtroom, but recanted her identification of appellant as one of the robbers and denied having been in a romantic relationship with appellant. Over defense counsel's hearsay objections, the trial court admitted into evidence the employees' and Harris's recorded interviews with the police.

Additionally, over defense counsel's Fifth Amendment objection, a detective testified that during a phone call between appellant and the detective, appellant hung up when the detective said that he was investigating a robbery. Defense counsel again objected when the detective testified that appellant never called him back. The trial court sustained the objection but denied a motion for mistrial. Appellant was

convicted as charged, and this appeal ensues.

Appellant argues that the trial court erred in admitting Harris's recorded interview identifying him as one of the robbers in the surveillance video. Significantly, Harris was not an eyewitness.

Trial court decisions on the admissibility of evidence are reviewed for an abuse of discretion, as limited by the rules of evidence. *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001). "[W]hether evidence falls within the statutory definition of hearsay is a matter of law, subject to de novo review." *Browne v. State*, 132 So. 3d 312, 316 (Fla. 4th DCA 2014) (citation omitted).

Section 90.801(2)(c), Florida Statutes (2016), states: "A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . [o]ne of identification of a person made after perceiving the person." The reasoning behind the rule is that "such statements bear the mark of reliability because they are usually made in close temporal proximity to the actual event while the witnesses' visual memory of the event is fresh." *Stanford v. State*, 576 So. 2d 737, 739 (Fla. 4th DCA 1991). A statement of identification "refers to the witness seeing a person after the criminal episode and identifying that person as the offender." *Id.* at 740. The rule was not "intended to allow other out-of-court statements by a witness to others naming the person that the witness believes committed the crime." *Id.* "To extend the rule that far would permit countless repetitions by a witness to others, regardless of time and place, of the witnesses' belief as to the guilty party, a result we do not believe intended by the drafters of the rule." *Id.*

In *Ibar v. State*, 938 So. 2d 451 (Fla. 2006), police showed six individuals who were acquaintances of the defendant—but not eyewitnesses to the crime—a photograph created from a video surveillance tape. These individuals testified at trial that when they were initially shown the photo, they identified the person in the photo as the defendant or someone who resembled the defendant. The supreme court adopted the reasoning of several district court opinions, including *Stanford*, and disproved of such evidence. The supreme court explained: "To expand the rule to allow as substantive evidence an out-of-court identification made by anyone who sees or is shown a picture of the defendant could result in the defendant being convicted through the testimony of persons who have no relationship or connection to the criminal offense." *Id.* at 462.

In this case, the trial court admitted Harris's recorded statement to

police in which she identified appellant from a surveillance video of the robbery. As the state concedes, this was improper under *Ibar*. Harris's recorded out-of-court identification, unlike that of the other two eyewitnesses, would not be admissible under section 90.801(2)(c).

The state claims that the error was harmless because the employees identified appellant as the robber at the scene. Under the harmless error test, the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

Contrary to the state's contention, the error was not harmless. Identification was the central issue at trial. The state's argument ignores the fact that both employees and Harris recanted their identification of appellant as the robber at trial. Additionally, the state relied on Harris's pre-trial identification in closing arguments. Further, during deliberations, the jury requested a playback of all the recorded interviews, including Harris's. Given these circumstances, it cannot be said that the error was harmless beyond a reasonable doubt. *See Banks v. State*, 790 So. 2d 1094, 1099 (Fla. 2001) (rejecting contention that error was harmless where the improperly admitted evidence implicated defendant, was used in arguments by the state to the jury, and the jury requested a read-back of the erroneously admitted statements during deliberations); *Santana v. State*, 191 So. 3d 946, 948 (Fla. 4th DCA 2016) (finding error not harmless where jury requested during deliberations to listen to improperly admitted recording).

While this disposition renders appellant's remaining arguments on appeal moot, we briefly address the other issues raised by appellant to provide guidance in the event there is a retrial on remand. We first address the admission of hearsay evidence contained in the two employees' recorded statements. As noted above, section 90.801(2)(c) provides a hearsay exception for statements of identification. "Florida courts have limited the scope of section 90.801(2)(c) to exclude statements containing descriptions or accusatory narratives." *Smith v. State*, 880 So. 2d 730, 739 (Fla. 2d DCA 2004), *approved sub nom. Polite v. State*, 116 So. 3d 270 (Fla. 2013). As this court has explained:

> We believe that the typical situation contemplated by the code and the case law is one where the victim sees the assailant shortly after the criminal episode and says "that's the man." Hence, the phrase "identification of a person made after perceiving him" refers to the witness seeing a person after the

4

criminal episode and identifying that person as the offender.

*Stanford*, 576 So. 2d at 739-40 (footnote omitted).

In *Puryear v. State*, 810 So. 2d 901, 903 (Fla. 2002), the Florida Supreme Court held that testimony concerning a victim's out-of-court description of her assailant was not admissible into evidence as a statement of identification because "a description is not an identification." *See also Johnson v. State*, 199 So. 3d 433, 435-36 (Fla. 4th DCA 2016) (holding that "the victim's and the victim's friend's descriptions of the defendant as the one of the men who participated in the incident, as the responding officer's testimony recounted, do not qualify as non-hearsay 'statements of identification' under section 90.801(2)(c)"); *Simmons v. State*, 782 So. 2d 1000, 1000 (Fla. 4th DCA 2001) (finding that testimony concerning the victim's out-of-court statement about his confidence in his ability to identify his assailant was not a statement of identification).

In this case, the recorded interviews of both employees contained descriptions or narratives that fell outside statements of identification. Thus, the recorded interviews admitted at trial may include only statements of identification.

Finally, with respect to evidence that appellant hung up the phone in response to the detective's statement that he was investigating a robbery, the trial court should note that Florida law differs from federal law on the issue of the admission of comments on a defendant's right to silence. Under federal law, a defendant's pre-arrest, pre-*Miranda* silence may be used as substantive evidence of a defendant's guilt where a defendant has not expressly invoked the privilege against self-incrimination. *See Salinas v. Texas*, 570 U.S. 178, 189 (2013). The Florida Supreme Court, in contrast, has concluded that "a defendant's privilege against self-incrimination guaranteed under article I, section 9 of the Florida Constitution is violated when his or her pre-arrest, pre-*Miranda* silence is used against the defendant at trial as substantive evidence of the defendant's consciousness of guilt." *State v. Horwitz*, 191 So. 3d 429, 442 (Fla. 2016).

In summary, we find that the trial court erred in admitting out-of-court statements of identification made by a non-eyewitness to the crime. Accordingly, we reverse and remand.

*Reversed and remanded.*

GROSS and TAYLOR, JJ., concur.

5

*      *      *

*Not final until disposition of timely filed motion for rehearing.*